# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARIA DePANTOJA, | ) | 1:06cv0454 DLB |
| | ) | |
| Plaintiff, | ) ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) ) | |

## BACKGROUND

Plaintiff Maria DePantoja ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles XVI and II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On July 17, 2006, the action was reassigned to the undersigned for all purposes.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her applications for SSI and DIB on June 23, 2006, alleging disability since September 15, 2002, due lower back problems with pain in her legs, back and right side of her body. AR 86-88, 106-115. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 68-71, 73-76, 77. On January 6, 2005, ALJ Flierl held a hearing, and on August 13, 2005, denied benefits. AR 11-22. On February 15, 2006, the Appeals Council denied the request for review. AR 5-8.

Hearing Testimony

ALJ Patricia Flierl held a hearing in Fresno, California, on January 6, 2005. Plaintiff appeared with her attorney, Robert Christenson. An interpreter assisted at the hearing. AR 297.

Plaintiff testified that she was 45 years old and completed the fourth grade in Mexico. She cannot read or write in English and can "hardly" understand spoken English. AR 300. Her prior job included work in a packing house and in the field, and she last worked on September 15, 2002. She stopped working because the pain was so strong it made her vomit. AR 301.

Plaintiff explained that back pain and pain in her right hand keep her from working. Her pain goes all the way from her neck down to her heel. AR 301. She described the pain as strong, running all the way from her back to her stomach. Her hand hurts through the center of the bone and her right leg hurts in the center of the bone and heel. AR 303-304.

Plaintiff has problems sitting and thought she could sit for 20-30 minutes without needing to get up. She had to stop at a gas station during the drive to the hearing. AR 304. She thought that she could stand for 15-20 minutes and could walk around her house area. She said her heel will burst when standing and that it hurts every time she takes a step. Picking up a gallon of milk bothers her a lot. AR 305. She has to rest for 15-20 minutes, four to six times a day because her "heel will burst." AR 306. She thought she could sit for four hours in an eight hour day and could stand for four hours in an eight hour day. AR 307. She stated that she could stand that long only because she forces herself to because she has to prepare the meals.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that she does the house chores and stays home with her youngest child, age three and one-half.  AR 306.  During the day, she does house chores, cooks meals, makes the beds and cleans the rest rooms.  AR 307.  She lives with her husband and five children.  AR 307.

Her medications help the pain but cause a burning in her stomach.  Plaintiff can lift her right arm with difficulty, but not too high.  She uses her left hand to help.  AR 309.  She also has problems grasping things with her right hand, but thought she could hold a pen or pencil.  AR 310.  Cooking meals is difficult because of her right arm.  She has trouble lifting her foot and has to put her bra on very slowly.  AR 311.

When questioned by the ALJ, Plaintiff explained that she had to stop working in September 2002 because she couldn't bear picking grapes and lifting the trays.  AR 312.  She testified that she stopped because of the pain in her back.  AR 315.  Plaintiff's last day was September 15, 2002, and she had her appendix out on September 16, 2002.  AR 315.  When asked if she stopped working because of her appendicitis, Plaintiff replied, "[t]hat as well" and again stated that she couldn't stand her back pain.  AR 315.

When describing her heel pain, Plaintiff explained that her heel feels very warm, like it's going to split open.  AR 316.

Plaintiff worked in a packing shed for five years, beginning in 1995.  She packed asparagus while standing, and used her hands very fast.  AR 318.  She also carried trays full of asparagus and boxes that weighed about 20 pounds.  AR 319-320.

Medical Record

Plaintiff underwent an appendectomy on September 16, 2002, after a history of gastritis. AR 145, 152, 155, 161.  There is no evidence of complications.

In October 2002, Plaintiff began seeing Patricia Barreto, PA-C, for complaints of constant back pain with some radiating pain down her right leg.  Plaintiff ambulated without difficulty but moved very slowly.  Range of motion in her neck was excellent and there was no palpable spasm to the trapezial or rhomboid areas.  Straight leg raising was negative, but there was palpable spasm to the paravertebral musculature of the thoracic and lumbar spine.  Range of motion in her thoracic and lumbar spine was about 50 percent of normal and there was tenderness with

palpation over these areas. Ms. Barreto diagnosed cervical, thoracic and lumbar strain and radiculopathy. She ordered x-rays and prescribed medicine. AR 142.

Plaintiff underwent x-rays of her spine on October 30, 2002. The x-rays were normal. AR 189.

Plaintiff saw Ms. Barreto on November 12, 2002. She explained that her back pain was not getting better, but denied leg pain. Upon examination, range of motion in her back was about 85 percent of normal. She was diagnosed with chronic back pain and referred to an orthopedist. AR 140.

On December 10, 2002, Plaintiff returned to Ms. Barreto and complained of continued lumbar back pain, especially to the right side, radiating down the right leg and stopping at the knee. Plaintiff indicated that the pain was worse after she cleaned and when she returned to a standing position from stooping. Ms. Barreto assessed chronic back pain, refilled her medications and instructed Plaintiff to keep her appointment with the orthopedist. AR 138.

On January 10, 2003, Plaintiff saw Ms. Barreto for a follow-up on her back pain. She said she was feeling better with the medication and that she had minimal radiation of pain down her leg, but still had pain over the right sciatic nerve. The pain was worse after cleaning her house or doing a lot of activity. Ms. Barreto instructed her to keep her January 15, 2003, orthopedic appointment, and continue her medications, applying hot compresses, and exercises and massages. AR 184.

On January 18, 2003, Plaintiff saw Benjamin Chang, M.D., for a consultive orthopedic examination. Plaintiff complained of chronic low back pain and explained that she had a work-related injury on June 6, 1997. She described her pain as achy and dull, occasionally radiating down to the right buttock region, but said that it is alleviated by changing positions and medication. Upon examination, there was localized tenderness over the right lower lumbar paraspinal muscle, but there was no spasm, crepitus, effusion or deformities. Straight leg raising was negative. Motor strength in the upper and lower extremities was 5/5, muscle tone and bulk were normal and sensation was intact. Dr. Chang diagnosed chronic low back pain, likely from muscle strain, with no evidence of radiculopathy. He opined that Plaintiff could stand, walk and

4

sit for about six hours with normal breaks.  She could lift and carry 10 pounds frequently and 20 pounds occasionally.  She could occasionally bend, stoop, crouch, crawl, push and pull.  AR 162-165.

On February 6, 2003, State Agency physician James B. Peery, M.D., determined that Plaintiff could perform medium work.  He disagreed with Dr. Chang's opinion, noting that it was "overly restrictive" as to Plaintiff's ability to lift and carry and was not supported by physical findings.  AR 166-175.

In February, April and May 2003, Plaintiff continued to complain of chronic back pain and indicated that she had it for about three years.  AR 177-178.  She indicated that physical therapy did not help and that a shot helped the pain for only a few days.  AR 181.

On May 19, 2003, Plaintiff had an MRI of her lumbar spine.  The test revealed degenerative disc disease at L4-5 and L5-S1, moderate broad-based lumbar disc bulge at L5-S1 with significant right neural foraminal stenosis, and mild L5 right sided guarded compression.  AR 201.

On July 9, 2003, physical therapist Paul Laliberte BscPT indicated that Plaintiff attended physical therapy from June to July 2002, and again from March to April, 2003.  He opined that Plaintiff could perform sitting, standing, walking, lifting and carrying a minimum of 30 pounds, and handling objects with her upper extremities within normal limits.  AR 199.

On August 26, 2003, State Agency physician Durell D. Sharbaugh, M.D., completed a Physical Residual Functional Capacity Assessment.  He opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand and/or walk for about six hours and could sit for a total of six hours.  She could occasionally push/pull with her lower extremities.  She could frequently climb, balance, and kneel.  She could occasionally stoop, crouch and crawl.  Dr. Sharbaugh opined that Plaintiff's allegation of shoulder pain and her alleged reduced ability to sit and stand were unsupported.  AR 218-225.  This assessment was affirmed in October 2003.  AR 224.

Plaintiff began seeing S. Ehteshami, M.D., on August 28, 2003.  He recommended testing of her right lower limb and wanted to rule out L5 root compression.  AR 237.

On October 9, 2003, Plaintiff was examined by Dr. Ehteshami. He did not recommend surgery but thought Plaintiff should begin physical therapy. AR 235.

On October 20, 2003, Plaintiff saw Ms. Barreto for a follow-up on her back pain. The notes indicated that she had an EMG done, which was normal, and an MRI that showed a bulging disc. She continued to have debilitating pain. Plaintiff walked with a limp and had pain with palpation of the right sciatic area. Straight leg raising was negative, but she complained of pain and radiating pain when her leg was raised to 90 degrees. Ms. Barreto diagnosed lumbar back pain with radiculopathy. AR 233.

Plaintiff returned to see Ms. Barreto on November 24, 2003, for pain medication. The notes indicated that Plaintiff began seeing Dr. Cahill on November 21, 2003, for her chronic back pain. Antonio Sanchez, M.D., also signed the report. AR 230.

On January 6, 2004, Dr. Ehteshami examined Plaintiff and discussed surgical and conservative treatment. Plaintiff indicated that she did not want to consider surgery, and Dr. Ehteshami instructed Ms. Barreto to continue conservative measures. AR 234.

On July 16, 2004, Plaintiff complained of back pain and indicated that her right leg felt warm and tired. She also indicated that her pain was controlled with Motrin. AR 238.

On September 29, 2004, Plaintiff saw Ms. Barreto to have disability forms filled out. Plaintiff told her that she had a right shoulder injury two years ago after she fell while taking her children to school, and that she told Ms. Barreto about it at that time. Ms. Barreto did not see any reports of shoulder injury in her notes. She filled out the forms, but was not able to indicate that there was a disability because she did not have any supporting evidence. AR 253.

Plaintiff underwent x-rays of her right shoulder on September 30, 2004. The x-rays revealed moderate degenerative arthritis of the AC joint. AR 251.

Ms. Barreto saw Plaintiff on October 9, 2004, and diagnosed osteoarthritis in her right shoulder and referred her to a orthopedist. AR 250.

Plaintiff returned to Ms. Barreto on November 22, 2004, for a follow-up on osteoarthritis in her right shoulder and back pain. Plaintiff indicated that her right shoulder was causing even

6

more discomfort and she requested that Ms. Barreto fill out paperwork for Social Security. AR 247.

In a December 6, 2004, form report, Ms. Barreto opined that Plaintiff could lift and carry 10 pounds occasionally and frequently. She could stand and/or walk for less than two hours, but had no restrictions on sitting. She could not use her right shoulder pending further evaluation. Plaintiff could never crawl, climb, crouch or kneel, could occasionally bend and stoop, and could frequently squat and reach above with her left arm. She could never be around unprotected heights and could not drive automotive equipment until her right shoulder was evaluated. She could have only occasional exposure to marked temperature changes, dust, fumes and gases. AR 243-246.

On March 5, 2005, after the ALJ hearing, Plaintiff saw Juliane Tran, M.D., for a neurologic evaluation. Plaintiff complained of chronic back pain, but indicated that medications seemed to help the pain "a little bit." Upon examination, there was tenderness to palpation over the right L5/S1 lumbar level and right sciatic notch and pain with lumbar range of motion. Straight leg raising and sensory exam were normal, and motor strength was 5/5 throughout. Dr. Tran diagnosed back pain, probably from lumbar disc disease, with subjective symptoms of radicular pain. He indicated that the examination was "notable for symmetrical reflexes and normal strength throughout." He opined that Plaintiff would be restricted with activities involving lifting more than 50 pounds occasionally or more than 25 pounds frequently. She would be restricted with activities that involve frequent bending, stooping, kneeling or crouching. There were no restrictions in sitting, standing or walking. In an addendum dated May 17, 2005, Dr. Tran noted that he reviewed a prior x-ray of Plaintiff's right shoulder pursuant to the clarification request and explained that it did not change his functional assessment. AR 277-280.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of right AC joint arthritis and disc protrusion and right foraminal narrowing at L5-S1. Based on his review of the medical evidence and Plaintiff's testimony, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with limitations to occasional pushing and

pulling with her lower extremities, occasional kneeling, crouching, crawling and stooping, and no above shoulder height pushing, pulling or reaching with the right upper extremity.  With this RFC, Plaintiff would be able to perform her past relevant work as a packing shed worker.  Alternatively, pursuant to the Medical-Vocational Guidelines ("Grids"), the ALJ found that Plaintiff could perform a significant range of light work.  AR 20-21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (right AC joint arthritis and disc protrusion and right foraminal narrowing at L5-S1) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform her past relevant work as a packing shed worker; or alternatively, (5) retains the RFC to perform a significant number of light work. AR 20-21.

Plaintiff argues that the ALJ (1) erred in failing to use a Vocational Expert ("VE"); (2) erred in failing to adopt the limitations imposed by the treating physician's assistant; and (3) erred in failing to find Plaintiff credible.

## **DISCUSSION**

A.     Use of Vocational Expert

Plaintiff argues that a VE was necessary to determine whether she could perform her past work at the packing house with the limitations imposed. Plaintiff further argues that a VE was necessary to determine what jobs existed given her limitations, particularly the limitation to occasional pulling/pushing with the lower extremities and the preclusion from above shoulder height pushing/pulling with her right upper extremity.

At step four of the sequential evaluation process, the claimant bears the burden of showing that she is unable to perform her past relevant work. Terry v. Sullivan, 903 F.2d 1273,

---

[3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1275 (9th Cir. 1990) (claimant has the initial burden of proving the existence of a disability within the meaning of the Social Security Act). If she is unable to do so, the burden does not shift back to the Commissioner and the ALJ makes a finding of not disabled. VE testimony is only necessary in certain circumstances at step five in fulfilling the Commissioner's burden of demonstrating that the claimant can perform work in the national economy. *Embry v. Bowen*, 849 F.2d 418,422 (9th Cir.1988) (without other reliable evidence of a claimant's ability to perform specific jobs, the Commissioner must use a VE to meet that burden."). VE testimony, therefore, is unnecessary when the claimant is found to be able to perform past relevant work. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (where the claimant failed to show that he could not do his past relevant work, VE testimony was considered "useful, but not required").

Here, the ALJ found at step four that Plaintiff could return to her past work as a packing house worker. He found that she had the capacity for light work, with occasional pushing/pulling with her lower extremities, kneeling, crouching, crawling and stooping, and a preclusion from above shoulder height pushing/pulling with the right upper extremity. AR 20. Plaintiff testified that her past work at the packing house required standing at a conveyer belt and lifting boxes that weighed about 20 pounds, and the ALJ was free to rely on this description. AR 318-320; *Matthews*, 10 F.3d at 681 (a claimant's own testimony of past work is "reliable evidence"). The RFC finding therefore would not preclude Plaintiff from returning to her work at the packing house. Plaintiff does not dispute the RFC finding or her description of her work in the packing shed. Instead, she asserts, incorrectly, that a VE was required to make this step four determination. As explained, however, Plaintiff failed to carry her burden at step four and VE testimony was not required as the burden did not shift to the Commissioner.

The ALJ also made an alternate finding by deciding that even if Plaintiff met her burden at step four and the analysis continued to step five, she could perform work in the national economy and was therefore not disabled. AR 19.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only

when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the grids is inappropriate and a VE would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Secretary of Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

Considering her RFC for light work, age, education, and past work experience, the ALJ applied Rule 202.16 to find Plaintiff not disabled. AR 19-20. In doing so, he acknowledged Plaintiff's non-exertional impairments (occasionally pushing/pulling with lower extremities, kneeling, crouching, crawling and stooping, and a preclusion from above shoulder height pushing/pulling with the right upper extremity) but determined that they did not significantly impact work at the light and sedentary exertional levels. AR 20. This determination was within the ALJ's authority. Indeed, light work implies that the claimant is able to do occasional bending of the stooping type. SSR 83-14. Moreover, even a complete inability to crawl on hands and knees has "very little or no effect on the unskilled light occupational base." SSR 83-14.

Plaintiff cites SSR 83-15 in support of her argument that her limitation to no above shoulder height pushing/pulling with the right upper extremity would limit her to sedentary work. SSR 83-15 provides that significant limitations in reaching or handling may eliminate a large number of occupations and suggests that varying limitations may require the assistance of a VE. However, Plaintiff's upper right extremity limitation is not a significant limitation in reaching or handling. Rather, it is a very specific limitation imposed solely on one extremity.

The ALJ's determination at step four and step five did not require the use of a VE and Plaintiff's argument therefore fails.

B.      Treating Physician's Assistant's Opinion

Next, Plaintiff contends that the ALJ erred in failing to adopt the limitations imposed by Patricia Barreto, Plaintiff's treating physician's assistant. She points to Ms. Barreto's opinion

11

that Plaintiff is limited to lifting/carrying 10 pounds frequently and 10 pounds occasionally, able to stand/walk less than two hours, able to occasionally stoop and bend, and unable to climb, crawl, crouch or kneel. AR 243-246. This assessment was made in a December 6, 2004, form report, and Plaintiff argues that it is supported by the record.

Pursuant to the Social Security Regulations, evidence of impairments must come from "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a). A physician's assistant is not an acceptable medical source and the ALJ is therefore entitled to afford a physician's assistant's opinion less weight. *Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996). In fact, the ALJ need not address such evidence at all. *Bunnell v. Sullivan*, 912 F.2d 1149, 1152 (9th Cir. 1991). There are instances, however, when a physician's assistant may qualify as an acceptable medical source. For example, if an unacceptable medical source acts as the well-documented agent of a treating source or issues an opinion which is expressly adopted by a treating source, it may be an exception to the general rule. *Gomez,* 74 F.3d at 970-971 (finding a nurse practitioner to be an acceptable medical source where she was closely supervised by a physician, consulted with the physician in providing treatment to the claimant, and acted as an agent of the treating physician).

The ALJ examined Ms. Barreto's treatment notes but did not accept her reported limitations, which would preclude even a broad range of sedentary work, because she was a physician's assistant and the opinion was not corroborated by a physician. AR 18. While there is evidence that Ms. Barreto's treatment records were reviewed by a physician, the ALJ correctly notes that there is no evidence that her December 6, 2004, opinion as to Plaintiff's limitations was made in conjunction with, or under close supervision of, an acceptable medical source. AR 138, 184, 186, 230, 233, 243-246, 253. Under these circumstances, the ALJ was entitled to give her opinion less weight.

Plaintiff relies on SSR 06-3p to support her argument. SSR 06-30 recognizes the recent movement towards increased care by "other sources," such as physician's assistants. Specifically, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under [the] rules, are important and should be evaluated on key issues such as

impairment severity and functional effects, along with the other relevant evidence in the file." There may be instances where the opinion of the physician's assistant is entitled to controlling weight over opinions of acceptable medical sources. This determination depends on the particular facts of the case, and should include an examination of how long the source has known and how frequently the source has seen the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the individual's impairment(s), and any other factors that tend to support or refute the opinion.

The obvious flaw in Plaintiff's argument is that SSR 06-3p did not exist at the time of the ALJ's opinion. As explained above, the ALJ's determination complied with the state of the law at the time of his opinion, i.e., the rationale set forth in *Gomez*.

Second, even assuming that the ALJ was somehow under a duty to give more weight to Ms. Barreto's opinion, her opinion is subject to the same stringent examination as an opinion of an acceptable medical source. A review of Ms. Barreto's opinion reveals that it is inconsistent. Ms. Barreto assessed limitations due to right shoulder osteoarthritis, but also stated that "[f]urther evaluation [of the right shoulder] is necessary." AR 244. Dr. Tran performed a subsequent evaluation, which included a physical examination and review of shoulder x-rays, and concluded that Plaintiff did not have any limitations that were inconsistent with the ALJ's findings. AR 280. Certainly, then, Ms. Barreto's qualified assessment cannot outweigh the conflicting opinions of acceptable medical sources, especially where all of the examining physicians determined that Plaintiff could perform at least light work with some additional limitations. AR 164, 175, 219, 229, 280.

Plaintiff's argument is without merit and must be denied.

C.   Plaintiff's Credibility

Finally, Plaintiff contends that the ALJ erred in not finding her testimony credible. In support of her argument, she cites her prescription for pain medication, her consistent treatments

and persistent efforts to obtain relief, certain objective medical evidence, and her limited activities and abilities.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In rejecting Plaintiff's testimony, the ALJ first noted that while the radiographic evidence confirmed disc protrusion at L5-S1 and right foraminal narrowing, Plaintiff declined surgical intervention and opted to continue with conservative treatment. AR 18, 234. He also noted that Plaintiff was not receiving treatment consistent with chronic pain, such as biofeedback, acupuncture or attendance at a pain clinic. AR 18. She was also released from physical therapy in April 2003 due to improvement with the use of conservative modalities. AR 18. Plaintiff's conservative treatment was a proper consideration. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (where "conservative treatment" suggested a lower level of pain and functional limitation); see also *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility). Plaintiff points to her consistent

14

treatment in support of her credibility, but the ALJ is entitled to examine the quality of the visits rather than the quantity.

The ALJ also noted Ms. Barreto's statements of doubt when Plaintiff claimed she had told Ms. Barreto of her shoulder problem years earlier. AR 18, 253. Certainly, the ALJ is entitled to consider other opinions of Plaintiff's veracity. The ALJ may use "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ further noted the inconsistencies between Plaintiff's alleged limitations and the medical record. For example, although Plaintiff alleged pain in her cervical and thoracic spine, she had excellent range of motion of the neck and no spasm of the trapezial or rhomboid area. AR 18, 142.

The ALJ also set forth his observations at the hearing, and explained that Plaintiff did not appear to be in any pain or discomfort when raising her right arm above her head when demonstrating her prior job duties or when frequently using the arm during the hearing. AR 18, 19. See *Drouin v. Sullivan,* 966 F.2d 1255, 1258-59 (9th Cir. 1992) (ALJ's observations during the hearing, along with other evidence, constitutes substantial evidence).

The ALJ next noted that Plaintiff was not taking the types or amounts of pain medication normally associated with chronic pain. AR 18. He further explained that she reported that her back pain was controlled with Motrin. AR 18, 238. *Morgan v. Commissioner of Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's finding that symptoms improved with medication was valid consideration in assessing claimant's credibility). Indeed, there are numerous instances in the record where Plaintiff indicated that her pain improved with medication. AR 184, 238, 278.

Insofar as Plaintiff contends that the ALJ's finding that her complaints were not as severe as alleged because her treatment was provided primarily by a physician's assistant was improper, her argument fails. Plaintiff cites SSR 06-3p, discussed above, in support of her opinion. Again, however, SSR 06-39 was not in effect at the time of the ALJ's decision, and, in any event, does

15

not preclude an ALJ from making a logical inference from treatment provided mainly by a physician's assistant. *Macri,* 93 F.3d at 544.

The ALJ also questioned Plaintiff's veracity as to her reasons for stopping work. As he explains, Plaintiff testified that she stopped working on September 15, 2002, due to back pain, but the evidence shows that she underwent an emergency appendectomy the following day. AR 19. The ALJ was entitled to use this coincidence in concluding that her appendix issue was "likely the logical reason for her cessation of work at that point." AR 19. *Macri,* 93 F.3d at 544; *Thomas,* 278 F.3d at 958 (ALJ may consider claimant's reputation for truthfulness). The ALJ cited further instances of Plaintiff's questionable candor, including her ability to put on socks with no problem at the recent consultive examination despite her testimony that she has a hard time doing so, and her noted ability to lift 30 pounds despite her testimony that she cannot lift a gallon of milk. AR 19.

Finally, the ALJ set forth Plaintiff's testimony that she keeps house for her husband and five children and concluded that based on this testimony, her activities of daily living were not as limited as she alleged and there was evidence of exaggeration. AR 19. Plaintiff testified that she does the house chores and stays home with her youngest child, age three and one-half. AR 306. During the day, she does house chores, cooks meals, makes the beds and cleans the rest rooms. AR 307. Plaintiff told Dr. Chang that she does light chores, but does not drive. AR 162. In March 2005, she told Dr. Tran that she can do occasional cooking, house chores and dish washing, although these activities cause back pain. AR 277. Plaintiff's daily activities were a valid consideration given her testimony of debilitating pain. *Thomas,* 278 F.3d at 958.

Although Plaintiff points to numerous reasons as to why she should have been found credible, i.e., that she was prescribed Vicodin for pain and has made persistent efforts to obtain relief, these factors do not render the ALJ's credibility finding unsupported. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ⋯ and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Fair*, 885 F.2d at 603.

Plaintiff's argument is without merit and must be denied.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Maria DePantoja.


IT IS SO ORDERED.

Dated:    **December 29, 2006**                 **/s/ Dennis L. Beck**
3b142a                                                       UNITED STATES MAGISTRATE JUDGE